**HOOVER CO. v. COE, Commissioner of Patents.**

**No. 8602.**

United States Court of Appeals District of Columbia.

Argued April 7, 1944.

Decided July 10, 1944.

Writ of Certiorari Granted Nov. 6, 1944

See 65 S.Ct. 121.

Messrs. Richard R. Fitzsimmons and William D. Sellers, both of Chicago, Ill., with whom Mr. William S. Hodges, of Washington, D. C., was on the brief, for appellant.

Mr. R. F. Whitehead, of Washington, D. C., with whom Mr. W. W. Cochran, Solicitor, United States Patent Office, of Washington, D. C., was on the brief, for appellee.

Before MILLER, EDGERTON and ARNOLD, Associate Justices.

ARNOLD, Associate Justice.

Both parties to this suit claim that the sole issue involved is whether the patent claims set out in the complaint are supported by plaintiff's application. One of these claims has been copied from another patent. Others are substantially the same as the claims in the second patent, yet all of them were formulated for the express purpose of provoking interference proceedings in the Patent Office. All were rejected on the sole ground that they did not read on the disclosure of plaintiff's application. In substance this meant that the Patent Office did not consider the patent with which plaintiff hoped to provoke an interference sufficiently similar to the patent from which the claims were copied to justify interference proceedings.

Counsel for both parties admit that if plaintiff's claims are allowed the court will be unable to declare that plaintiff is entitled to a patent because the record does not show whether plaintiff made the prior discovery. The only result will be to overrule the administrative decision that interference proceedings are not justified. The case will then be sent back to the Patent Office to determine priority. The complaint itself does not ask the court to adjudge that plaintiff is entitled to a patent. The only relief requested is a decree directing the Commissioner of Patents to find the claims are readable on plaintiff's disclosure and allowable to him provided that he later is determined to have priority.

On its own motion this court raised the question whether Section 4915, R.S., 35 U.S.C.A. § 63, confers jurisdiction on the District Court to enter a decree which does not determine the right of the applicant to receive a patent but which instead directs the examiner to allow claims for the purpose of provoking subsequent interference proceedings. Both parties submitted mem-

oranda of authority supporting the jurisdiction of the District Court in the above situation.

█ In the absence of controlling decisions it would seem clear from the statute that the District Court had no jurisdiction over this suit. The language of Section 4915, R.S. gives the court authority to adjudge that an applicant is entitled according to law to receive a patent for his invention as specified in his claim, or any part thereof, as the facts in the case may appear. Such an adjudication cannot be made in this case. Before plaintiff here is entitled to a patent it must establish priority over the patent from which the claims are copied. Such priority cannot be determined here for two reasons: (1) The party against whom the plaintiff claims priority is not before the court; (2) There has been no decision of priority by the Board of Interference Examiners. The statute clearly indicates that the issue of priority can be heard in a suit in equity only when a patent has been refused by the Board of Appeals of the Patent Office or when the plaintiff is dissatisfied with a decision of the Board of Interference Examiners.

█ In substance, this case is not a suit on the merits but an appeal from the refusal of the Patent Office to take preliminary steps which would lead to interference proceedings. Sections 4911, 35 U.S.C.A. § 59a, and 4914, R.S., 35 U.S.C.A. § 62, give the United States Court of Customs and Patent Appeals jurisdiction to correct an administrative ruling of the Patent Office for error appearing on the Patent Office record. Nothing in Section 4915, R.S. indicates that a suit in equity tried on new evidence is a duplicate method of reviewing an administrative ruling in a case where the plaintiff's right to a patent

cannot be determined. Furthermore, considerations of sensible and orderly procedure are against this construction. The idea that a court of equity should interfere with the proceedings of an administrative tribunal by a trial de novo at a stage when no decision on the merits can be given is contrary to the fundamental concept of equity jurisdiction.

Turning now to the cases we find an explicit ruling by the Supreme Court that a proceeding under Section 4915, R.S. cannot select a single issue which affects plaintiff's right to a patent, without determining all the other issues on which that right depends. The Court said:

"The provision of section 4915 is that the circuit court may adjudge that the applicant 'is entitled, according to law, to receive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear;' and that, if the adjudication is in favor of the right of the applicant, it shall authorize the commissioner to issue the patent. *It necessarily follows that no adjudication can be made in favor of the applicant, unless the alleged invention for which a patent is sought is a patentable invention. The litigation between the parties on this bill cannot be concluded by solely determining an issue as to which of them in fact first made a cabinet creamery.* A determination of that issue alone, in favor of the applicant, *carrying with it, as it does, authority to the commissioner to issue a patent to him for the claims in interference,* would *necessarily* give the sanction of the court to the patentability of the invention involved." (Italics added.)[1]

Our own decision in Radtke Patents Corporation v. Coe[2] is to the same effect.

In the case before us we cannot deter-

[1] Hill v. Wooster, 1890, 132 U.S. 693, 698, 10 S.Ct. 228, 230, 33 L.Ed. 502.

[2] 1941, 74 App.D.C. 251, 122 F.2d 937. In Butterworth v. United States ex rel. Hoe, 1884, 112 U.S. 50, 61, 5 S.Ct. 25, 31, 28 L.Ed. 656, it was indicated that the record in a suit under Section 4915, R.S. should include the whole merits of the applicant's right to a patent. The court said: "It is thereby provided (referring to R.S. § 4915) that the applicant may have remedy by bill in equity. This means a proceeding in a court of the United States having original equity jurisdiction under the patent laws, according to the ordinary course of equity practice and procedure. It is not a technical appeal from the Patent Office, like that authorized in section 4911, confined to the case as made in the record of that office, but it is prepared and heard upon all competent evidence adduced, *and upon the whole merits.* Such has been the uniform and correct practice in the circuit courts. Whipple v. Miner [C.C.], 15 F. 117; Ex parte Squire [Fed.Cas.No.13,269]; 3 Ban. & A. 133; Butler v. Shaw [C.

mine plaintiff's right to a patent because it involves deciding that he is prior in time to another applicant who is not a party to the suit. Since the court cannot decide the whole controversy on its merits we have no jurisdiction over the intermediate proceedings in the Patent Office.[3]

The notion that an equity suit under Section 4915, R.S. gave jurisdiction to authorize the issuance of a patent to a party where the issue of priority could not be determined stems from the case of Pitman v. Coe.[4] In that case the Commissioner moved to dismiss a proceeding under Section 4915, R.S. because the denial of plaintiff's claim by the Patent Office was based on improper joinder of claims in one application. The Commissioner argued that, since patentability was yet to be determined, the order refusing the claims was interlocutory and not final. No question of priority was involved and all the necessary parties were before the court. The court declared that the refusal of a patent claim based on an order of division could be reviewed by a suit in equity. The prayer of the complaint asked for the issuance of a patent and not for a limited review of the order of division by itself. It is, therefore, not clear from the decision whether the court thought that the District Court had authority to review the single question of division and send the case back to the Patent Office for determination of patent-

ability or whether it considered the trial court had the power to conduct an original hearing on patentability. If the decision be construed as holding that the issue of patentability need not be decided in a Section 4915, R.S. proceeding it is inconsistent with the Supreme Court's ruling in Hill v. Wooster and has been overruled by our decision in Radtke Patents Corp. v. Coe. If it be construed as authorizing the District Court to decide the question of patentability before the Patent Office has determined that issue, it sets forth a highly questionable doctrine which in effect transfers to the court the duty of the Patent Commissioner[5] to make an original expert investigation of the prior art. But even if we followed the dubious course of allowing the District Court to make an original investigation of priority before the Patent Office acted, there would be no jurisdiction here because the holder of the interfering application or patent would be an indispensable party.[6]

Appellant asserts that this court has tacitly approved administrative review of Patent Office rulings under Section 4915, R.S. in cases where the record showed that the claims involved were copied from other patents or applications to provoke interference proceedings. It cites the cases of International Cellucotton Products Co. v. Coe[7] and American Cyanamid Co. v. Coe.[8] Those cases involved the refusal to grant

---

C.], 21 F. 321." (Parenthetical matter and italics added.)

[3] Cf. Synthetic Plastics Co. v. Ellis-Foster Co., 3 Cir., 1935, 78 F.2d 847; Cherry-Burrell Corp. v. Coe, —— U.S. App.D.C. ——, 143 F.2d 372.

[4] 1933, 62 App.D.C. 365, 68 F.2d 412.

[5] Section 4904, R.S., 35 U.S.C.A. § 52.

[6] Hazeltine Corp. v. White, 2 Cir., 1934, 68 F.2d 715. That case was a suit by a losing party in a multiple interference proceeding, brought against the successful interferent. It was held that the other losing interferents were indispensable parties to a suit under Section 4915, R.S. The court said, at page 717 of 68 F.2d: "Only in the sense that a decree in this suit would be futile to establish the right of any one to a patent, on the assumption that the Commissioner would not be authorized to issue it, can it be said that a decree can be made which does not affect the in-

terests of the absent adverse parties, * * *. A decree which did authorize the Commissioner to issue the patent would ignore the right of the absent adverse parties to be heard, and leave the controversy in such a condition that its final determination might be contrary to fundamental principles of equity and good conscience."

If, as the statute requires, this court were to issue a decree adjudging that the plaintiff is entitled to the claims in issue, it would likewise "ignore the right of the absent adverse parties to be heard." That the rival claimant is an adverse party and that the issue of readability may be the most crucial one in his case is illustrated by Smith v. Carter Carburetor Corp., 3 Cir., 1942, 130 F.2d 555.

[7] 1936, 66 App.D.C. 248, 85 F.2d 869.

[8] 1939, 70 App.D.C. 330, 106 F.2d 851.

claims copied from another patent. Nevertheless, the mandate directed the Patent Office to issue a patent to the plaintiff. The Patent Office was unable to comply because priority had not been determined. The mandate was, therefore, ignored and interference proceedings were instituted after our decision. The question of jurisdiction was not raised by the Patent Office or considered by this court. Our attention was not called to the fact that the mandate in favor of plaintiff's right to a patent could not be carried out. Instead of supporting jurisdiction the unforeseen results of these cases illustrate the inappropriateness of an independent suit in equity to determine the correctness of an intermediate ruling in the Patent Office. They present a procedure in which a court of equity makes a declaratory judgment on a record which compels the Patent Office to ignore the terms of that judgment.

Doubtless the failure of this court to notice the lack of jurisdiction in the cases above referred to was due to the artificial form in which they were presented. Theoretically each patent claim is a distinct invention. Therefore, the refusal of any single claim appears in the pleadings under Section 4915, R.S. as the refusal of a patent on a distinct invention. Actually, however, in applications containing multiple claims the claims often do not represent distinct inventions but only different ways of describing a single invention. This is particularly true when claims are copied to be used as counts in an interference. The purpose of such copied claims is not to claim distinct inventions but to compare similar single inventions detail by detail. This method of limiting or enlarging the scope of a single invention through the device of multiple claims should be recognized for what it is,—an administrative method by which the Patent Office clarifies the issues in an interference proceeding. The fact that the Patent Office uses an artificial conception of the phrase "distinct invention" should not be made a vehicle to enlarge the jurisdiction of this court to include appeals which may properly be taken only to the United States Court of Customs and Patent Appeals.

For these reasons the judgment of the court below dismissing the complaint will be

Affirmed.